UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Stephanie V. Ault
        v.                          Civil No. 10-cv-553-JL
                                    Opinion No. 2012 DNH 005
Michael J. Astrue, Commissioner,
Social Security Administration

**MEMORANDUM ORDER**

This is an appeal from the denial of a claimant's
application for Social Security Disability Benefits.  See 42
U.S.C. § 405(g).  The claimant, Stephanie Ault, contends that the
administrative law judge ("ALJ") incorrectly found that although
Ault was severely impaired by degenerative joint disease in her
left knee and left femoral neuropathy, Admin. R. 14;[1] see 20
C.F.R. §§ 404.1520 (a),(c), she retained the residual functional
capacity[2] ("RFC") to perform light work, Admin. R. 15; see 20
C.F.R. § 404.1567(b), and that she remained capable of performing
her past work as a receptionist at a laboratory, nail technician,

_____

[1]The court will reference the administrative record ("Admin.
R.") to the extent that it recites facts contained in or directly
quotes documents from the record.  Cf. Lalime v. Astrue, No. 08-
cv-196-PB, 2009 WL 995575, at *1 (D.N.H. Apr. 14, 2009).

[2]"Residual Functional Capacity" is defined as "an assessment
of an individual's ability to do sustained work-related physical
and mental activities in a work setting on a regular and
continuing basis.  A 'regular and continuing basis' means 8 hours
a day, for 5 days a week, or an equivalent work schedule."  SSR
96-8p, 1996 WL 374184, at *1 (July 2, 1996).

and customer service representative. Admin. R. 17; see 20 C.F.R. § 404.1520(a)(4)(iv). Ault contends that the ALJ committed reversible error at steps two through five of the five step disability analysis.[3] Specifically, Ault alleges that the ALJ:

> (1) failed to properly analyze Ault's impairments at Step 2 and erroneously concluded that her pancreatitis, migraine headaches, myofascial pain, and depression were not severe,[4] Admin. R. 14; Cl. Br. 8-13,

---

[3]The social security regulations set forth a five step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden in the first four steps to show that: (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment; (3) the impairment meets or equals a specific impairment listed in the Social Security regulations; or (4) the impairment prevents or prevented her from performing past relevant work. At Step 5 of the analysis, it is the Commissioner's burden to establish that jobs exist in the national economy given the claimant's impairments, age, education, and work experience. See id.

[4]Ault also contends that the ALJ erred in failing to mention the effects of hypothyroidism, asthma, and the side-effects of her medications. Admin. R. 14-15. The court finds no error as none of these impairments were mentioned in Ault's "Disability Report," and were only briefly mentioned during the hearing. Id. at 31-33, 35-36, 124. Indeed, asthma was only mentioned in response to a question about a list of medications, but not discussed as an impairment. Id. at 35. Hypothyroidism and side-effects from medication were mentioned almost as an afterthought in response to prompting by her attorney and even then, Ault stated that due to hypothyroidism "and some of the other medications I'm on, I could be tired. I find myself dozing off sometimes, and sometimes it can be while I am driving, and sometimes it's at work." Id. at 36. Although a claimant's burden at Step 2 is de minimis, see LaBonte v. Astrue, No. 09-358-P-S, 2010 WL 2024895, at *2 (D. Me. May 18, 2010), mere mention of an impairment without further development does not satisfy this burden. See id. Ault hardly demonstrates that these impairments significantly limit her "ability to do basic work activities." 20 C.F.R. § 404.1520(c). The court finds no

(2) failed to determine that her left knee injury and
left femoral neuropathy qualified as a listed
impairment in  20 C.F.R. Part 404, Subpart P, Appendix
1, see Admin. R. 15; Cl. Br. 13-14; see generally 20
C.F.R. §§ 404.1520(a)(4)(iii),(d), 404.1525, 404.1526,

(3) improperly assigned greater weight to the opinion
of a non-examining physician, and did not grant
controlling weight to a treating physician's functional
assessment, Cl. Br. 17-19, see generally 20 C.F.R.
§§ 404.1502, 404.1527(d); SSR 96-2p, 1996 WL 374188
(July 2, 1996), and

(4) failed at Step 4 to take into account Ault's
allegations of disabling depression, migraine
headaches, pancreatitis, hypothyroidism, neck pain, and
asthma when determining her RFC.[5]  See Cl. Br. 14-17.

The Commissioner asserts that the ALJ's findings are supported by

substantial evidence in the record, and moves for an order

affirming his decision.  This court has subject-matter

jurisdiction under 28 U.S.C. § 1331 (federal question) and 42

U.S.C. § 405(g) (Social Security).  After a review of the

administrative record, the court concludes that although the ALJ

properly determined Ault's severe impairments at Step 2, he did

not account for these impairments when fashioning Ault's RFC at

Step 4.  The court also finds error in the ALJ's treatment of an

error.  Cf. Lacroix v. Barnhart, 352 F. Supp. 2d 100, 115 (D.
Mass. 2005).

[5]Ault also inexplicably contends there was error at Step 5.
Cl. Br. 17-19.  The ALJ determined that Ault was not disabled at
Step 4, Admin. R. 17, and therefore did not reach Step 5.  The
court will not address this claim of error.

opinion rendered by Ault's treating physician.  The court grants Ault's motion, denies the Commissioner's motion, and remands for further proceedings.

## I.   <u>APPLICABLE LEGAL STANDARD</u>

The court's review under Section 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); <u>see</u> Simmons v. Astrue, 736 F. Supp. 2d 391, 399 (D.N.H. 2010).  If the ALJ's factual findings are supported by substantial evidence in the record, they are conclusive, even if the Court does not agree with the ALJ's decision and other evidence supports a contrary conclusion. <u>See</u> Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  The ALJ is responsible for determining issues of credibility, resolving conflicting evidence, and drawing inferences from the evidence in the record. <u>See</u> Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Pires v. Astrue, 553 F. Supp. 2d 15, 21 (D. Mass. 2008) ("resolution of conflicts in the evidence or

questions of credibility is outside the court's purview, and thus where the record supports more than one outcome, the ALJ's view prevails").  The ALJ's findings are not conclusive, however, if they were "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen, 172 F.3d at 35.  If the ALJ made a legal or factual error, the decision may be reversed and remanded to consider new, material evidence, or to apply the correct legal standard.  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16, 19 (1st Cir. 1996); see 42 U.S.C. § 405(g).

## II.   **BACKGROUND**

Pursuant to this court's local rules, the parties filed a Joint Statement of Material Facts (document number 13), which is part of the record reviewed by the court.  See LR 9.1(d). This court will briefly recount the key facts and otherwise incorporates the parties' joint statement by reference.

Ault filed a request for benefits in August 2007 alleging an onset of disability that month due to, inter alia, knee pain, nerve damage in her leg, neck pain, pancreatic pain, migraines, and depression.  See Admin. R. 31-42, 124, 149-61.  She was 35

years old at the date of filing, <u>id.</u> at 111, and taking numerous
prescription medications for her afflictions.[6]  <u>Id.</u> at 173-175.

Ault's extensive medical records indicate many of her
alleged impairments significantly pre-date her disability filing,
and that she had been seeing numerous medical providers for many
years before her alleged onset date.  Medical tests conducted in
November 2004 indicate that Ault suffered from "pancreas
divisum,"[7] <u>see</u> <u>id.</u> at 576, and records from March and June 2005
indicate that she had a history of "recurrent pancreatitis."[8]
<u>Id.</u> at 218-19, 343.  Over the course of the next three years,
Ault would have numerous doctor's office visits and
hospitalizations to address her gastro-intestinal issues.  <u>See</u>,
<u>e.g.</u>, <u>id.</u> at 218-19, 379-80, 383-84, 396-98, 409, 439, 517, 596-
97, 688, 719-20, 1066-67, 1078, 1118.

In addition, Ault sustained injuries to her knee, upper
back, and neck in a motor vehicle accident in April 2005.  Admin.
R. 357-358.  After months of treatment by medical providers and

---

[6]As of March 2010, Ault was taking twenty-four prescription
medications.  <u>Id.</u> at 209.

[7]"Pancreas divisum is "a developmental anomaly in which the
pancreas is divided into two separate structures, each with its
own duct."  <u>Dorland's Illustrated Medical Dictionary</u>, 1387 (31st
ed. 2007).

[8]"Recurrent" or "chronic pancreatitis" is an "inflammation
of the pancreas . . . . with chronic abdominal pain."  <u>Dorland's
Illustrated Medical Dictionary</u>, 1388 (31st ed. 2007).

physical therapy, see id. at 389-92, 449, 450, 526-29, 536-39,
549, 556, Ault had surgery on her left quad tendon in March 2006,
id. at 239, and, in July 2006, her left knee. Id. at 284-85. By
September, 2006, a treating physician noted that Ault was still
hampered by significant pain and disability. Id. at 655. Ault's
medical records indicate that she continued to experience post
surgical knee pain. See, e.g., id. at 489-90, 607, 675, 697,
731, 751-52, 934. She was often observed to have an unsteady
gait. See, e.g., id. at 655, 675, 723, 776, 1186, 1188, 1191.

Ault also often sought medical care for neck pain and
migraines thought to arise from her neck injury. See, e.g., id.
at 221-22, 565, 589, 609-10, 653, 705-08, 731, 737-38, 990, 1014,
1033, 1049, 1051, 1056-57, 1095-97, 1100-02, 1114, 1138-39, 1157,
1192. In October 2009, December 2009, and February 2010, Ault,
upon the advice of treating physician Dr. Leslie Dionne, MD,
consulted with Foundation Neurology. Id. at 1191-92, 1193, 1229.
Ault was found to suffer from "[m]igraine headaches, poorly
controlled. Chronic neck and upper back pain. Insomnia with
fragmented sleep." Id. at 1229. A November 2009 MRI ordered by
Foundation Neurology, however, revealed no abnormalities. Id. at
1196. During her October 2009 visit, Physician's Assistant
Sharon Lockwood noted that "[i]t is going to be difficult to
treat [Ault] because she has tried so many different medications

in the past, which have not been helpful or have caused side effects." Id. at 1192.  In March, 2010, Nurse Lockwood stated that Ault's

> [h]eadaches occur four times per week.  She has tried multiple preventative and rescue medications for her headaches in the past.  They have been ineffective or have caused side effects.  We have continued to try various medications and non medicinal [sic] treatments. She also sees pain specialists.  So far, headaches continue to be poorly controlled.

Id. at 1258.

Although some of Ault's regular providers opined that her headaches, neck, and knee pain were limiting,[9] id. at 800-03, 988, 1145, 1231, an agency consulting physician, Dr. Lewis J. Goldfine, concluded that Ault was capable of a wide range of light work.  Id. at 17, 915-22.  Dr. Goldfine's report, however, was not detailed and contained little reference to the medical records he used to formulate his opinion.  Id. at 915-22.  The ALJ decided to adopt Dr. Goldfine's opinion, however, stating only that it was "supported by the medical evidence in the file

---

[9]A treating physician, Dr. Dionne, wrote three separate letters over the course of 18 months stating that Ault's conditions limited her to only part-time work.  Id. at 988, 1145, 1231.  Although Physician's Assistant Ronald Carson opined that Ault was capable of "gainful employment on a sustained basis," he also imposed restrictions that would make full-time employment unsustainable, namely, that Ault would need to take "unscheduled breaks to relieve pain or discomfort" and would be absent three or more times per month from work.  Id. at 803.

and is not inconsistent with the other substantial evidence in the record." Id. at 17.

As such, the ALJ found that Ault has the residual functional capacity to perform light work, see 20 C.F.R. § 404.1567(b), "except she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 2 hours at a time and up to 6 hours in an 8 hour work period; stand or walk for 45 minutes at a time and up to 3 hours in an 8 hour work period." Admin. R. 15. The ALJ thus concluded that Ault was capable of performing her past work as a lab receptionist, nail technician, and customer service representative.[10]  Id. at 17.  This appeal followed.[11]


## III. **ANALYSIS**

A five-step process is used to evaluate an application for social security benefits. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden through the first four steps to show

---

[10]The ALJ also placed restrictions on Ault's ability to use her left foot, climb ladders, stairs, ramps, and scaffolding, and crawl, stoop, kneel, and crouch.  Id. at 15.

[11]The Decision Review Board, see generally 20 C.F.R. § 405.401, did not complete its review of the ALJ's denial in a timely fashion, Admin. R. 1, rendering the ALJ's order a final decision of the Commissioner appealable to this court. See 20 C.F.R. § 405.415.

that she is disabled.[12]  Freeman v. Barnhart, 274 F.3d 606, 608
(1st Cir. 2001).  At the fifth step, the Commissioner bears the
burden of showing that a claimant has the residual functional
capacity to perform other work that may exist in the national
economy.  Id.; see also 20 C.F.R. § 404.1520(a)(4)(v); Heggarty
v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  The ALJ's
conclusions at steps four and five are informed by his assessment
of a claimant's RFC, which is a description of the kind of work
that the claimant is able to perform despite her impairments.  20
C.F.R. §§ 404.1520(a)(4), 404.1545.

Ault alleged that she suffered from disabling pain due to,
inter alia, knee pain, leg pain, migraine headaches,
pancreatitis, and neck pain.  See Admin. R. 31-33, 124.  The ALJ
found at Step 2 that Ault was severely impaired by "degenerative
joint disease of the left knee and left femoral neuropathy."  Id.
at 14.  He concluded, however, that:

> I find [Ault's] pancreatitis causes only intermittent
> symptoms and therefore causes only mild limitations in
> her ability to perform work related functions.  I find
> that her complaints of migraine headaches and
> myofascial pain are based solely upon subjective
> complaints as diagnostic techniques have failed to

---

[12]The Social Security Act defines disability as the
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months."  42 U.S.C.A. § 423(d)(1)(A).

> determine an etiology for these subjective complaints.
> . . . I find no diagnostic evidence to support the
> claimant's allegations of chronic myofascial pain.
> Therefore I find that the claimant's depression,
> pancreatitis[,] migraine headaches and cervical
> myofascial pain impairments are not severe within the
> meaning of the regulations.  However, any limitations
> caused by these impairments will be considered in
> conjunction with her other impairments when determining
> the claimant's residual functional capacity.

Admin. R. 14 (citations omitted).  Although the ALJ promised at

Step 2 that Ault's non-severe impairments would be factored into

his RFC analysis, it is unclear from his order whether he

actually did so.  The ALJ, when discussing Ault's RFC at Step 4,

mentioned Ault's testimony that she is often fatigued,

uncomfortable, and in pain.[13]  See Admin. R. 15-16.  He

discounted these complaints, however, ruling only that "the

claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent

they are inconsistent with the above residual functional

capacity."  Id. at 16.  He explained his credibility decision in

terms of her knee pain only, id., concluding that:

> [b]ased upon a thorough review of all of the evidence
> of record, the undersigned is persuaded that the
> claimant has knee impairments that could reasonably be
> expected to produce some of the symptoms she alleges.
> However, to the extent that the claimant alleges
> impairment so severe as to preclude the performance of

---

[13]The ALJ never specifies the source of her pain, so it is
unclear whether he is discussing pain due to her knee issues,
neck pain, or migraine headaches.

11

all sustained work activity, the undersigned does not
find her fully credible.

Id.

Ault alleges it was error not to conclude that these
impairments were severe at Step 2, and that the ALJ failed to
properly consider the functional effects of these impairments at
Step 4.  The court reverses the ALJ's decision because there is
no indication that these issues were sufficiently accounted for
when formulating Ault's RFC at Step 4.[14]  See, e.g., Resendes v.

---

[14]The court finds there was no error at Step 2 even though
the record could support a different result.  Pires, 553 F. Supp.
2d at 21.  "To meet the severity requirement, the claimant must
show that an impairment or combination of impairments amounts to
more than a slight abnormality and has more than a minimal effect
on an individual's ability to work."  Treadwell v. Comm'r, No.
1:09-cv-00534-JAW, 2010 WL 4412311, at *2 (D. Me. Oct. 29, 2010)
(quotations omitted).  See McDonald v. Sec'y of Health & Human
Servs., 795 F.2d 1118, 1124 (1st Cir.1986); SSR 85-28, 1985 WL
56856, at *3 (1985).  "This burden is a de minimis burden,
designed to do no more than screen out groundless claims."
Treadwell, 2010 WL 4412311 at *2.  Only medical evidence may be
used to support a finding that an impairment or combination of
impairments is severe, as a claimant's "statements alone are not
enough to establish that there is a physical or mental
impairment."  20 C.F.R. §§ 404.1528(a); SSR 85-28, 1985 WL 56856
at *4; Treadwell, 2010 WL 4412311 at *2; LaBonte, 2010 WL 2024895
at *2.

In this case, the ALJ specifically cited objective medical
tests that support his conclusion that these impairments were not
severe, Admin. R. 14, and indeed there is additional record
support for his finding.  Id. at 642, 685, 731, 813-14, 848, 941,
943, 963, 974, 1011, 1146, 1150, 1196, 1235-1237.  The record,
however, also includes numerous reports of hospitalizations,
physician visits for, and diagnosis of, myofascial pain, chronic
migraines, and chronic pancreatitis, albeit some of which was
based on self-reports by Ault.  See id. at 517, 719-20, 737-38,

Astrue, 780 F. Supp. 2d 125, 142-43 (D. Mass. 2011); Guyton v. Apfel, 20 F. Supp. 2d 156, 166 (D. Mass. 1998).

Concluding that an impairment is not severe does not relieve the ALJ of the duty to discuss whether such limitations affect a claimant's RFC at Step 4. Cf. Treadwell, 2010 WL 4412311 at *3. An ALJ must factor into his or her RFC analysis the effects, if any, of non-severe impairments on a claimant's functional abilities. 20 C.F.R. § 404.1545(e). It is possible for an ALJ to conclude that a non-severe impairment does not hinder a claimant's "ability to perform his past relevant work at Step 4, but, if so, [the ALJ] must say so in his opinion, and explain how he reached that conclusion." Guber v. Astrue, No. 1:10-cv-172-JAW, 2011 WL 1253888, at * 2 (D. Me. Mar. 30, 2011).

The court cannot discern whether the ALJ in fact considered Ault's non-severe impairments at Step 4 despite the notation at Step 2 that these impairments would be taken into account. As such, the ALJ's treatment of these issues was erroneous. See

---

1100-01, 1118, 1157, 1178, 1191-93, 1229, 1258. On this record, the court might have drawn a different severity conclusion than the ALJ. "To be sure, the resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for the doctors or the courts," Reeves v. Barnhart, 263 F. Supp.2d 154, 156 (D. Mass. 2003), and thus the court cannot conclude that the ALJ committed reversible error at Step 2. Cf. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

Resendes 780 F. Supp. 2d at 142 ("it is not sufficient for the adjudicator to make a single, conclusory statement that the individual's allegations have been considered" (quotations and brackets omitted)).  The ALJ referenced only Ault's knee pain, essentially ignoring mountains of medical evidence showing that she regularly, and for many years, complained, inter alia of migraines, neck pain, and pancreatitis to many medical providers.[15]  This is not the case where minor complaints were not addressed in detail.  Cf. Fifield v. Astrue, No. 08-30078-KPN, 2009 WL 763096, at *9 (D. Mass. Mar. 19, 2009) (ALJ not required to discuss every piece of contradictory evidence). Rather, there are many observations by Ault's regular providers that she suffered from acute "recurrent" or "chronic" pancreatitis, see, e.g., Admin. R. 397, 1118, 1078, intense headaches or migraines multiple times per week that are "poorly controlled," id. at 1191, 1229, and "chronic" neck pain.  Id. at 1192, 1231-32.  An ALJ is not required to conclude that these non-severe impairments were disabling, but given the breadth of the medical evidence chronicling Ault's attempts to remedy her

_____

[15]It is true that Ault's doctors diagnosed her with chronic pancreatitis, chronic migraines, and persistent neck pain based on her subjective reports, however, at Step 4, unlike Step 2, an ALJ must "look further" at the record and determine whether those complaints are credible and compromise her ability to work. Guyton, 20 F. Supp. 2d at 166; see Pires, 553 F. Supp. 2d at 23.

pain, at the very least these afflictions should be discussed at Step 4.  Even if the ALJ decides that these impairments "would not affect the [claimant's] ability to perform [her] past relevant work at Step 4, . . . he must say so in his opinion, and explain how he reached that conclusion."  Guber 2011 WL 1253888, at *2.

The ALJ's analysis of whether Ault's allegations of pain were credible was likewise incomplete.  Assessment of a claimant's credibility is the exclusive province of the ALJ, who observes the claimant, evaluates her demeanor, and considers how her testimony "fit[s] in with the rest of the evidence."  Frustaglia, 829 F.2d at 195.  The ALJ's credibility determination is entitled to deference if it is supported by substantial evidence.  Id.  In determining the credibility of a claimant's subjective testimony, however, the ALJ must consider the entire record, including objective medical evidence, the claimant's statements, information provided by physicians and other witnesses, and any other relevant evidence.  SSR No. 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  When an ALJ has directly observed the claimant, he is "not free to accept or reject that individual's subjective complaints solely on the basis of such personal observations.  Rather, . . . the determination rationale is to contain a thorough discussion and analysis of the objective

15

medical and nonmedical evidence, including the individual's subjective complaints and the adjudicator's personal observations." Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).

A claimant's subjective complaints of pain will be deemed credible only if they are consistent with objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). An ALJ, however, cannot base credibility findings solely on the absence of objective medical evidence, rather, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain . . . is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." SSR No. 96-7p, 1996 WL 374186, at *6; see Pires, 553 F. Supp. 2d at 23 ("mandate to take evidence besides objective medical findings into account has been solidly established in the case law of this and other circuits").

Courts admonish administrative law judges to be particularly careful when assessing subjective complaints of pain. "Where a claimant's complaints of pain are a significant factor limiting [her] ability to work, and those complaints are not fully supported by the medical evidence in the record, the Administrative Law Judge must look further," Guyton, 20 F. Supp.

2d at 166, and inquire into the impact of these subjective complaints on daily functionality.  See Avery, 797 F.2d at 28-29. In Avery, the court of appeals directed that when evaluating a claimant's subjective complaints of pain and other symptoms, the ALJ should consider a variety of factors.  See id.  It is true that an ALJ need not address every Avery factor[16] in his opinion so long as proper inquiry is made during the administrative hearing.  See, e.g., Resendes, 780 F. Supp. 2d at 142 n. 16. Where an ALJ concludes that subjective evidence of pain is not credible, however, he "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant].  DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986).  Satisfactory inquiry into the Avery factors alone does not relieve an ALJ of his obligation to explain a credibility determination.  Guyton, 20 F. Supp. 2d at 166.  Indeed, failure "to provide the requisite findings to support [a] credibility determination" provides a basis for remand.  Id., see, e.g., Resendes, 780 F. Supp. 2d at 142-43.

---

[16]These factors include:  "1. [t]he nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. [p]recipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. [t]ype, dosage, effectiveness, and adverse side-effects of any pain medication; 4. [t]reatment, other than medication, for relief of pain; 5. [f]unctional restrictions; and 6. [t]he claimant's daily activities."  Avery, 797 F.2d at 28-29.

Here, the ALJ's analysis of Ault's subjective complaints of pain other than knee pain was extremely limited and arguably non-existent.  Admin. R. 15-17.  There was no indication, other than a passing notation at Step 2, that these complaints were taken into account, id. at 14-15, and such analysis is clearly insufficient.  See, e.g., Guyton 20 F. Supp. 2d at 166.  This is not the case where a claimant makes vague allegations of pain that have limited record support.  Rather, extensive medical records indicate that Ault was treated for many years for neck pain, migraines, and pancreatitis.  Although the ALJ is not required to accept this as proof of disability, cf. Fifield, 2009 WL 763096, at *8-*9, the ALJ, in this case, needed to support his determination with specific or sufficient findings.  Compare Frustaglia 829 F.2d at 195 ("Although more express findings, regarding head pain and credibility, than those given here are preferable, we have examined the entire record and their adequacy is supported by substantial evidence") with Guyton 20 F. Supp. 2d at 166 (although ALJ made appropriate Avery inquiry during the administrative hearing, the case was remanded because "the decision insufficiently explains the credibility determination").

Here, the ALJ's credibility determination focuses exclusively on whether Ault's allegations of knee pain only were credible.  Admin. R. 16-17.  The decision at Step 4 lacks any

18

mention of Ault's subjective complaints of migraines, neck pain,
or pancreatitis.  The ALJ's analysis stands in stark contrast to
that in Fifield, 2009 WL 763096, at *8, where the ALJ "made
specific findings as to relevant evidence when deciding to
disbelieve" the claimant.  Id. (quotations, italics, and brackets
omitted).  An ALJ is not required to accept these allegations of
pain, but at the very least, he must "provide the requisite
findings to support [his] credibility determination." Guyton, 20
F. Supp. 2d at 166; cf. Dalis v. Barnhart, No. Civ. A. 02-10627-
DPW, 2003 WL 21488526, at *10-*11 (D. Mass. Jun. 24,
2003)(finding that claimant's headache pain was not credible
supported by specific findings by ALJ).  Because such support was
absent, the court remands the case for further findings.  See
Guyton, 20 F. Supp. 2d at 166; cf. Guber 2011 WL 1253888, at *2.

Finally, because the issue may arise on remand, the court
briefly addresses the ALJ's treatment of a series of letters in
August 2008, August 2009, and February 2010 written by Ault's
treating physician, Dr. Dionne, limiting Ault to part-time
employment.  Admin. R. 988, 1145, 1231.  In her February letter,
virtually identical to the two prior letters, Dr. Dionne states:

> This letter serves to document that you carry the
> diagnosis of cervical myofascial pain (neck pain) and
> recurrent headaches on that basis, chronic left leg
> pain and weakness due to nerve damage after surgery and
> right knee pain which has also become chronic.  These
> diagnoses have limited you to working part time.  It

> would not be appropriate at this time to look for full
> time employment.  I recommend continuing your part-time
> status 16 hours per week.

Id. at 1231.  The ALJ merely noted the existence of this letter,
stating that "[s]uch recommendation is not sufficient as a
statement of functional capacity."  Id. at 17.

The decision that a claimant is disabled is reserved to the
Commissioner.  See 20 C.F.R. § 1527(e)(1); SSR 96-5p, 1996 WL
374183, at *2 (July 2, 1996).  As such, "[a] statement by a
medical source that [a claimant is] 'disabled' or unable to work"
does not compel a finding that the claimant is disabled.  20
C.F.R. § 1527(e)(1).  Still, an ALJ is prohibited from
disregarding relevant medical source opinions.  See SSR 96-5p,
1996 WL 374183, at *5.  Indeed, an ALJ is required to give
controlling weight to the opinion of a treating physician "if it
is well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in the case record."  Lopes v. Barnhart, 372
F. Supp. 2d 185, 193-94 (D. Mass. 2005) (quotations and brackets
omitted); see generally SSR No. 96-2p, 1996 WL 374188, at *1.
Where an ALJ's functional assessment is at odds with a medical
source opinion, he must adequately explain his reasons for
disregarding that opinion.  See 20 C.F.R. § 404.1527(d); SSR 96-

20

8p, 1996 WL 374184, at *7; Marshall v. Astrue, No. 08-cv-147-JD, 2008 WL 5396295, at *3 (D.N.H. Dec. 22, 2008).

Here, Dr. Dionne's letter indicates that she believed, based on her diagnosis of Ault's various illnesses, that Ault was functionally restricted from working on "a regular and continuing basis." See generally SSR 96-8p, 1996 WL 374184, at *1. Although the form of that opinion may be a basis for giving it less weight, disregarding it completely because it "is not sufficient as a statement of functional capacity" does not address the clear fact that the ALJ's decision is in conflict with the opinion of Ault's treating source. Cf. Monroe v. Barnhart, 471 F. Supp. 2d 203, 211-13 (D. Mass. 2007) (ALJ must give sufficient explanation for adopting contrary view of disability). On remand, the ALJ should fully explain his reasons for disregarding Dr. Dionne's opinion.

## IV.   <u>CONCLUSION</u>

Pursuant to sentence four of 42 U.S.C. § 405(g), Ault's motion to reverse and remand the Commissioner's decision[17] is granted.  The Commissioner's motion to affirm the decision[18] is

---

[17]Document no. 11.

[18]Document no. 12.

denied. The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 10, 2012

cc:   Janine Gawryl, Esq.
      Gretchen Leah Witt, Esq.